**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

ARMANDO ENRIQUEZ,                                      Case No.: 21-cv-7934 (LGS)

                    Plaintiff,

                                                         **VERIFIED COMPLAINT**

     -against-

KASPER GROUP LLC,                                      **PLAINTIFF DEMANDS**
                                                         **A TRIAL BY JURY**

                    Defendant.

-------------------------------------------------------------------------x

       Plaintiff ARMANDO ENRIQUEZ, by and through his attorneys, White & Hilferty, hereby

complains of Defendant, upon information and belief as follows:

## NATURE OF THE CASE

1.     Plaintiff brings this action alleging that Defendant violated Title VII of the Civil Rights

     Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*, the New York State Human Rights

     Law ("NYSHRL"), N.Y. Exec. Law 290. *et seq.*, and the New York City Human Rights

     Law ("NYCHRL"), N.Y. Admin Code 8-107, *et seq.* Plaintiff seeks damages to redress his

     emotional and financial losses, which were inflicted by Defendant's unlawful

     discriminatory and retaliatory practices in violation of federal, state, and local statutes.

## JURISDICTION & VENUE

2.     Jurisdiction of this Court is proper under 42 U.S.C. § 2000, *et seq.*, and 28 U.S.C. §§ 1331

     and 1343.

3.     The Court has supplemental jurisdiction over Plaintiff's claims brought under state law

     pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in

     which a substantial part of the events or omissions giving rise to the claims occurred.

## PROCEDURAL REQUIREMENTS

5.      On October 27, 2020, Plaintiff filed a Charge of Discrimination with the New York City

Commission on Human Rights ("NYCCHR"), which was cross-filed with the Equal

Employment Opportunity Commission ("EEOC").

6.      Plaintiff's formal Charge of Discrimination filed with the NYCCHR/EEOC asserted the

same factual allegations that are asserted in this Verified Complaint.

7.      On July 8, 2022, Plaintiff received a Notice of Suit Rights from the EEOC, dated June 21,

2022.

8.      Plaintiff has filed this action within 90 days of receipt of the Notice of Suit Rights.

9.      Plaintiff timely and properly filed this suit after exhausting all administrative remedies with

the NYCCHR/EEOC.

10.     Plaintiff now seeks to file this Verified Complaint with this Court.

## THE PARTIES

11.     Plaintiff ARMANDO ENRIQUEZ ("Plaintiff") was and is a resident of the State of New

York, County of Kings. Plaintiff is an Asian male of Filipino descent.

12.     Defendant KASPER GROUP LLC ("Defendant") is an employer as defined by 42 U.S.C.

§ 2000e and N.Y. Admin Code 8-102. Defendant employs fifteen (15) or more employees.

Defendant's business address is 1412 Broadway, New York, NY 10018. Defendant's

address for service of process is Kasper Group LLC, c/o Corporation Service Company,

80 State Street, Albany, NY 11207-2543.

13.     At all times relevant, Defendant owned, operated, and/or maintained its place of business

in the State of New York, County of New York.

2

**MATERIAL FACTS**

14.     Plaintiff is an Asian male of Filipino descent. Plaintiff was born in the Philippines.

15.     On April 16, 2015, Defendant sent Plaintiff an offer letter for a position of Junior Technical Designer. In said offer letter, Defendant noted, "[w]e are impressed with your skills and accomplishments and belief your background and experience are a good match for our present needs…[w]e look forward to having you as part of our team."

16.     On or about April 20, 2015, Defendant hired Plaintiff as a Junior Technical Designer. Prior to his hire, Plaintiff was employed by Jones Apparel Group[1] as an Assistant Technical Designer for five years and as a Junior Technical Designer for four years.

17.     During his tenure with Defendant, Director of Technical Design Gregory Zavalunov ("Zavalunov") directly supervised Plaintiff. Upon information and belief, Zavalunov is Caucasian of Persian descent.

18.     In or around 2017, Plaintiff began working on a team comprised of Technical Designer Olga Brown ("Brown"), Assistant Technical Designer Svetlana Poplavska ("Poplavska"), Junior Technical Designer Nadia Diyeva ("Diyeva"), and Junior Technical Designer Annley Frank ("Frank") (collectively the "Team"). Upon information and belief, Brown and Poplavska are Caucasian and of Eastern European descent; Diyeva is Korean; and Frank is African American. The Team was supervised by Zavalunov, who assigned each Team member daily and/or weekly tasks. The Team members shared similar roles and responsibilities including, among other things, product development, which consisted of evaluation of garment size measurements, quality, and pattern recommendations for

---

[1] In or around 2015, Defendant purchased Jones Apparel Group and renamed the company the "Kasper Group LLC."

improvements. The Team's job duties resulted in a final product called "Technical Packages."

19.   Between 2017 and 2020, while working on the Team, Zavalunov discriminated against Plaintiff by subjecting him to disparate treatment in the terms and conditions of his employment. Specifically, Zavalunov consistently assigned Plaintiff heavier workloads than his similarly situated non-Filipino colleagues. Zavalunov subjected Frank, who is African American, to the same treatment. In contrast, Zavalunov assigned lighter workloads to Poplavska and Diyeva.

20.   In 2018, Plaintiff completed approximately 1,159 Technical Packages that were assigned to him by Zavalunov. During the same year, Frank was assigned to and completed approximately 1,095 Technical Packages. In contrast, Diyeva completed approximately 566 Technical Packages assigned by Zavalunov and Poplavska completed approximately 719 Technical Packages assigned by Zavalunov.[2] Clearly, Zavalunov disparately assigned Plaintiff significantly more work than his similarly situated colleagues outside of his protected classes.

21.   Thereafter, Zavalunov continued to assign Plaintiff additional work and imposed disparate restrictions on his use of sick, personal, and annual leave. For example, on one occasion, Zavalunov informed Plaintiff that he could not use his vacation days unless he obtained Zavalunov's prior approval "well in advance" on the pretextual basis that it would be problematic for him to take one or two days off from work because it would "inconvenience the rest of the Team. Significantly, Zavalunov did not impose the same restrictions on

---

[2] In 2018, Brown was out of work on maternity leave for three months. During said time, Zavalunov disparately assigned Brown's workload to Plaintiff and Frank. Zavalunov did not assign any of Brown's workload to Diyeva and Poplavska.

Brown, Diyeva, and Poplavska. In fact, said employees used their annual leave for two to three weeks on end without any warning or issue. Similarly, Diyeva was frequently late for work; however, Zavalunov consistently overlooked her tardiness thereby imposing different rules and expectations than Plaintiff was required to adhere to.

22. On March 30, 2018, Plaintiff notified Zavalunov that he would be using a sick day and would be unable to report to work. In response, Zavalunov stated, "[u]nless something happened, please plan and preapprove your days off so I can plan how to handle the workload accordingly."

23. On April 2, 2018, Plaintiff engaged in protected activity by submitting a written complaint to Human Resources ("HR") Representative William Nino ("Nino"), Vice President of Technical Department Vincent Morales ("Morales"),[3] and Zavalunov regarding the disparate treatment to which he was subjected as compared to his similarly situated Team members (Brown, Diyeva, and Poplavska). Specifically, Plaintiff explicitly noted that Zavalunov took issue when Plaintiff requested to utilize sick or vacation time whereas his colleagues were permitted to utilize between two and three weeks of vacation time without issue. Plaintiff also made clear that the disparate treatment was due to a discriminatory animus based upon race and national origin by stating, in relevant part, "perhaps you could look into your unethical hiring practices, where it seems employees are being hired from the same geographical continent." Plaintiff provided detailed examples the disparate treatment to which he was subjected in his workload as compared to the other Team members outside of his protected classes.

---

[3] Morales was Zavalunov's direct supervisor.

24.    Following Plaintiff's engagement in protected activity, Defendant commenced a pattern of retaliatory actions against Plaintiff. For example, Zavalunov and Brown managed the fitting sessions; however, when Brown was unable to attend a session(s) (i.e., when Brown was out for three months on maternity leave), Zavalunov required Plaintiff to assume Brown's responsibilities thereby increasing Plaintiff's overall workload. In contrast, Zavalunov never required Diyeva or Poplavska to take on any additional work associated with fitting sessions.

25.    During the next 15 weeks while Brown was on maternity leave, Plaintiff completed approximately 404 Technical Packages and attended 41 fitting sessions. Frank completed approximately 337 Technical Packages and attended 20 fitting sessions. During the same 15-week period, Poplavska only completed 223 Technical Packages and Diyeva only completed 179 Technical Packages. Zavalunov did not require Poplavska nor Diyeva to attend any fitting sessions during this time.

26.    On December 21, 2018, Zavalunov further retaliated against Plaintiff by assigning him additional tasks. Plaintiff opposed the disproportionate amount of work that he was assigned in comparison to his non-Filipino Team members. On the same date, Morales overheard the conversation between Plaintiff and Zavalunov and inquired whether Plaintiff was OK. Plaintiff again complained about the disparate treatment to which he was subjected by Zavalunov; however, Morales failed to ameliorate the situation.

27.    Throughout 2019, Zavalunov continued to subject Plaintiff to disparate treatment in the terms and conditions of his employment as compared to his similarly situated non-Filipino Team members.

28. On October 4, 2019, at the end of the day, Zavalunov assigned Plaintiff 13 assignments to complete by between October 7 and 11, 2019. On the same date, Zavalunov assigned zero assignments to Diyeva, four assignments to Poplavska, and four assignments to Frank.

29. On October 7, 2019, Zavalunov further retaliated against Plaintiff by assigning him three additional assignments on top of the 13 assignments he was required to finish between October 7 and 11, 2019. Plaintiff engaged in further protected activity by opposing the workload allocation disparity and reporting that his non-Filipino team members were either not working on any assignments or only had between one and four assignments that were given to them on or about October 4, 2019. In response, Zavalunov acknowledged Plaintiff's previous discrimination complaint by stating, "[a]re we doing this again" and dismissed Plaintiff's legitimate concerns by claiming that "everyone" on the Team received the "same amount of work." However, Zavalunov did not assign Plaintiff's non-Filipino Team members any additional tasks during the relevant time period.

30. In February 2020, Plaintiff learned that he had completed approximately 1,018 Technical Packages that were assigned to him by Zavalunov and attended approximately 50 fitting sessions in 2019. During the same time, Frank was assigned to and completed approximately 1,014 Technical Packages and attended 22 fitting sessions. In contrast, during the same period of time, Poplavska was assigned to and completed approximately 776 Technical Packages and one fitting session, Diyeva was assigned to and completed approximately 635 Technical Packages and did not attend any fitting sessions in 2019.

31. Shortly thereafter, in March 2020, Defendant "furloughed" Plaintiff on the pretextual basis that it needed to furlough multiple employees due to the COVID-19 pandemic. However, over the following few months, Defendant asked multiple non-Filipino employees to return

to work from furlough; however, Defendant never mentioned anything to Plaintiff about his return to work.

32.    In or around August 2020, Plaintiff engaged in further protected activity by contacting the NYCCHR to file a formal complaint of race and national origin discrimination and retaliation against Defendant. Between August 2020 and late October 2020, Plaintiff communicated with a NYCCHR Representative regarding the finalization of his discrimination and retaliation complaint.

33.    On or about October 28, 2020, Plaintiff engaged in protected activity by finalizing and filing the formal discrimination and retaliation complaint with the NYCCHR.

34.    Significantly, just a few weeks after Plaintiff filed the formal NYCCHR complaint, Respondent further retaliated against Plaintiff by terminating his employment on the pretextual basis that he and other employees were still furloughed and would be officially "laid off." However, as noted above, between March and October 2020, Defendant asked multiple non-Filipino employees to return to work from furlough. Defendant denied Plaintiff the same opportunity and instead terminated his employment due to its discriminatory and retaliatory animus against him based upon his race and national origin, as well as his previous engagements in protected activity.

35.    Based on the foregoing, Defendant unlawfully discriminated and retaliated against Plaintiff based upon his race (Asian) and Filipino national origin by subjecting him to disparate treatment in the terms and conditions of his employment as compared to similarly situated non-Filipino employees. After Plaintiff engaged in protected activity by complaining about the discrimination to which he was subjected, Defendant unlawfully retaliated against him by further increasing his workload, "furloughing" under the pretext of the COVID-19

pandemic, denying him the opportunity to return to work from furlough while affording other non-Filipino employees the same opportunity, and officially terminating his employment.

36.     Defendant subjected Plaintiff to disparate treatment in the terms and conditions of his employment as compared to similarly situated non-Filipino employees and/or did not engage in protected activity by opposing Defendant's discriminatory and retaliatory practices. Defendant's actions substantially interfered with Plaintiff's employment.

37.     As a result of Defendant's unlawful discriminatory and retaliatory practices, Plaintiff has suffered and continues to suffer significant financial ramifications, humiliation, outrage, and mental anguish.

**AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION**
**AGAINST DEFENDANT UNDER**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

38.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

39.     Defendant's discrimination against Plaintiff concerned one of the activities protected by Title VII of the Civil Rights Act of 1964, Section 2000e-2.

40.     Title VII of the Civil Rights Act of 1964, Section 2000e-2, Section 703 states: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

41.     Plaintiff is a member of protected classes pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e-2, namely Plaintiff is an Asian male of Filipino descent.

42. Plaintiff possessed proper qualifications for Defendant to continue his employment as evidenced by the offer letter received by Plaintiff wherein Defendant explicitly stated, "[w]e are impressed with your skills and accomplishments and believe your background and experience are a good match for our present needs...[w]e look forward to having you as part of our team and Plaintiff's exemplary performance during his tenure with Defendant. During said time, Defendant did not issue Plaintiff and warnings or disciplinary citations and therefore, Plaintiff was qualified to continue his employment with Defendant.

43. Defendant and/or its agents engaged in an unlawful practice by discriminating against Plaintiff because of his Asian race and Filipino national origin. Defendant and/or its agents intended to discriminate against Plaintiff on the basis of his race and national origin by subjecting him to disparate treatment in the terms and conditions of his employment. Specifically, Defendant assigned Plaintiff a heavier workload and more assignments than his similarly situated non-Filipino colleagues (Diyeva, Poplavska, and Brown) and imposed restrictions on Plaintiff's use of sick, personal, and annual leave which were not imposed on his similarly situated non-Filipino colleagues (Diyeva, Poplavska, and Brown). Zavalunov was personally involved in and responsible for the adverse employment actions taken against Plaintiff, as alleged fully in the preceding paragraphs. Defendant further demonstrated a discriminatory animus against Plaintiff's similarly situated colleague Annley Frank, who is African American, to the same disparate treatment as Plaintiff. When Plaintiff complained to Zavalunov, Morales, and HR Representative Nino about the unlawful discrimination to which he was subjected, said individuals failed to properly address and ameliorate the situation and instead subjected Plaintiff to unlawful retaliation. Zavalunov and Morales acted in their official capacities when discriminating against

Plaintiff. Defendant ultimately terminated Plaintiff's employment using the COVID-19 as a pretextual basis to conceal its discriminatory motivation, causing Plaintiff significant mental anguish and emotional distress.

44.   As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-2, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION AGAINST DEFENDANT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

45.   Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

46.   Title VII prohibits discrimination and retaliation.

47.   Title VII of the Civil Rights Act of 1964, Section 2000e-3(a) states: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

48.     Defendant's employment practices as alleged at length herein constitutes an impermissible act of retaliation in violation of Title VII. The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus.

49.     Plaintiff engaged in protected activity when he submitted a written complaint to Zavalunov, Morales, and HR Representative Nino on April 2, 2018, opposed Zavalunov's disparate assignment of additional work to Plaintiff between 2018 and 2020, and when he filed a formal discrimination and retaliation complaint with the NYCCHR/EEOC on October 28, 2020. Plaintiff's opposition of discrimination and submitting multiple informal and formal complaints regarding Defendant's race and national origin discrimination constitute protected activities under Title VII.

50.     Defendant was notified of Plaintiff's engagements in protected activity when Plaintiff complained directly to Zavalunov and Morales on April 2, 2018,  regarding the race and national origin discrimination to which he was subjected, when Plaintiff complained directly to Zavalunov regarding his disparate treatment of Plaintiff as compared to his similarly situated non-Filipino Team members (Diyeva, Brown, and Poplavska) and opposed said discriminatory practices, and when Plaintiff filed a formal discrimination and retaliation complaint with the NYCCHR/EEOC. In response to Plaintiff's engagements in protected activity, Defendant engaged in a plethora of retaliatory conduct against Plaintiff.

51.     As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by: (1) increasing his workload by assigning him additional tasks and job duties that were not assigned to his similarly situated non-Filipino colleagues; (2) denying Plaintiff the opportunity to return to work from furlough while offering the same to his similarly situated non-Filipino; and (3) terminating his

employment shortly after he filed a formal complaint with the NYCCHR/EEOC on the pretextual basis that it was laying off "multiple" employees.

52.    As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-3, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION**
**AGAINST DEFENDANT UNDER**
**THE NEW YORK STATE HUMAN RIGHTS LAW**

53.    Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

54.    Plaintiff is a member of a protected class pursuant to New York Executive Law § 296, namely, Plaintiff is an Asian male of Filipino descent.

55.    Defendant and/or its agents intended to discriminate against Plaintiff on the basis of his Asian race and Filipino national origin.

56.    Defendant's discrimination against Plaintiff concerned activities protected by New York Executive Law § 296.

57.    The New York State Human Rights Law, N.Y. Exec. Law § 296 provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to

discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

58.   Plaintiff possessed proper qualifications for Defendant to continue his employment as evidenced by the offer letter received by Plaintiff wherein Defendant explicitly stated, "[w]e are impressed with your skills and accomplishments and believe your background and experience are a good match for our present needs…[w]e look forward to having you as part of our team and Plaintiff's exemplary performance during his tenure with Defendant. During said time, Defendant did not issue Plaintiff and warnings or disciplinary citations and therefore, Plaintiff was qualified to continue his employment with Defendant.

59.   Defendant and/or its agents engaged in an unlawful practice by discriminating against Plaintiff because of his Asian race and Filipino national origin. Defendant and/or its agents intended to discriminate against Plaintiff on the basis of his race and national origin by subjecting him to disparate treatment in the terms and conditions of his employment. Specifically, Defendant assigned Plaintiff a heavier workload and more assignments than his similarly situated non-Filipino colleagues (Diyeva, Poplavska, and Brown) and imposed restrictions on Plaintiff's use of sick, personal, and annual leave which were not imposed on his similarly situated non-Filipino colleagues (Diyeva, Poplavska, and Brown). Zavalunov was personally involved in and responsible for the adverse employment actions taken against Plaintiff, as alleged fully in the preceding paragraphs. When Plaintiff complained to Zavalunov, Morales, and HR Representative Nino about the unlawful discrimination to which he was subjected, said individuals failed to properly address and ameliorate the situation and instead subjected Plaintiff to unlawful retaliation. Zavalunov and Morales acted in their official capacities when discriminating against Plaintiff.

Defendant ultimately terminated Plaintiff's employment using the COVID-19 as a pretextual basis to conceal its discriminatory motivation, causing Plaintiff significant mental anguish and emotional distress.

60.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of N.Y. Exec. Law §296, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### AS A FOURTH CAUSE OF ACTION FOR RETALIATION AGAINST DEFENDANT UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

61.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

62.     New York Executive Law § 296(7) prohibits discrimination and retaliation.

63.     The New York State Human Rights Law, N.Y. Exec. Law § 296(7) provides, in pertinent part that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

64.     Defendant's employment practices as alleged at length herein constitute impermissible acts of retaliation in violation of New York Executive Law § 296(7). The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

65.   Plaintiff engaged in protected activity when he submitted a written complaint to Zavalunov, Morales, and HR Representative Nino on April 2, 2018, opposed Zavalunov's disparate assignment of additional work to Plaintiff between 2018 and 2020, and when he filed a formal discrimination and retaliation complaint with the NYCCHR/EEOC on October 19, 2020. Plaintiff's opposition of discrimination and submitting multiple informal and formal complaints regarding Defendant's race and national origin discrimination constitute protected activities under Title VII.

66.   Defendant was notified of Plaintiff's engagements in protected activity when Plaintiff complained directly to Zavalunov, Morales, and HR Representative Nino on April 2, 2018, regarding the race and national origin discrimination to which he was subjected, when Plaintiff complained directly to Zavalunov regarding his disparate treatment of Plaintiff as compared to his similarly situated non-Filipino Team members (Diyeva, Brown, and Poplavska) and opposed said discriminatory practices, and when Plaintiff filed a formal discrimination and retaliation complaint with the NYCCHR/EEOC. In response to Plaintiff's engagements in protected activity, Defendant engaged in a plethora of retaliatory conduct.

67.   As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by: (1) increasing his workload by assigning him additional tasks and job duties that were not assigned to his similarly situated non-Filipino colleagues; (2) denying Plaintiff the opportunity to return to work from furlough while offering the same to his similarly situated non-Filipino colleagues; and (3) terminating his employment shortly after he filed a formal complaint with the NYCCHR/EEOC on the pretextual basis that it was laying off "multiple" employees.

68.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of New York Executive Law § 296(7), Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION AGAINST DEFENDANT UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

69.     Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

70.     Plaintiff is a member of a protected class pursuant to New York City Human Rights Law, N.Y. Admin. Code § 8-107, namely, Plaintiff is an Asian male of Filipino descent.

71.     Defendant and/or its agents intended to discriminate against Plaintiff on the basis of his Asian race and Filipino national origin.

72.     Defendant's discrimination against Plaintiff concerned activities protected by N.Y. Admin. Code § 8-107.

73.     The New York City Human Rights Law, N.Y. Admin Code § 8-107 provides, in pertinent part: "It shall be an unlawful discriminatory practice: (a) For an employer or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service or alienage or citizenship status of any person: (i) To represent that any employment or position is not available when in fact it is available; (ii) To refuse to hire or employ or to bar or to discharge from employment such person; or (iii) To discriminate against such person in compensation or in terms, conditions, or privileges of employment."

74. Plaintiff possessed proper qualifications for Defendant to continue his employment as evidenced by the offer letter received by Plaintiff wherein Defendant explicitly stated, "[w]e are impressed with your skills and accomplishments and believe your background and experience are a good match for our present needs…[w]e look forward to having you as part of our team and Plaintiff's exemplary performance during his tenure with Defendant. During said time, Defendant did not issue Plaintiff and warnings or disciplinary citations and therefore, Plaintiff was qualified to continue his employment with Defendant.

75. Defendant and/or its agents engaged in an unlawful practice by discriminating against Plaintiff because of his Asian race and Filipino national origin. Defendant and/or its agents intended to discriminate against Plaintiff on the basis of his race and national origin by subjecting him to disparate treatment in the terms and conditions of his employment. Specifically, Defendant assigned Plaintiff a heavier workload and more assignments than his similarly situated non-Filipino colleagues (Diyeva, Poplavska, and Brown) and imposed restrictions on Plaintiff's use of sick, personal, and annual leave which were not imposed on his similarly situated non-Filipino colleagues (Diyeva, Poplavska, and Brown). Zavalunov was personally involved in and responsible for the adverse employment actions taken against Plaintiff, as alleged fully in the preceding paragraphs. When Plaintiff complained to Zavalunov, Morales and HR Representative Nino about the unlawful discrimination to which he was subjected, said individuals failed to properly address and ameliorate the situation and instead subjected Plaintiff to unlawful retaliation. Zavalunov and Morales acted in their official capacities when discriminating against Plaintiff. Defendant ultimately terminated Plaintiff's employment using the COVID-19 as a

pretextual basis to conceal its discriminatory motivation, causing Plaintiff significant mental anguish and emotional distress.

76.    As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of N.Y. Admin Code § 8-107, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**AS A SIXTH CAUSE OF ACTION FOR RETALIATION AGAINST
DEFENDANT UNDER
THE NEW YORK CITY HUMAN RIGHTS LAW**

77.    Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

78.    The New York City Human Rights Law, N.Y. Admin Code § 8-107 prohibits discrimination and retaliation.

79.    The New York City Human Rights Law, N.Y. Admin. Code § 8-107(7) provides in pertinent part that, "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter . . . The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment… in a materially adverse change in the terms and conditions of employment…provided, however, that the retaliatory or discriminatory act or acts

19

complained of must be reasonably likely to deter a person from engaging in protected activity."

80. Defendant's employment practices as alleged at length herein constitute impermissible acts of retaliation in violation of N.Y. Admin. Code § 8-107(7). The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

81. Plaintiff engaged in protected activity when he submitted a written complaint to Zavalunov, Morales, and HR Representative Nino on April 2, 2018, opposed Zavalunov's disparate assignment of additional work to Plaintiff between 2018 and 2020, and when he filed a formal discrimination and retaliation complaint with the NYCCHR/EEOC on October 19, 2020. Plaintiff's opposition of discrimination and submitting multiple informal and formal complaints regarding Defendant's race and national origin discrimination constitute protected activities under Title VII.

82. Defendant was notified of Plaintiff's engagements in protected activity when Plaintiff complained directly to Zavalunov, Morales, and HR Representative Nino on April 2, 2018, regarding the race and national origin discrimination to which he was subjected, when Plaintiff complained directly to Zavalunov regarding his disparate treatment of Plaintiff as compared to his similarly situated non-Filipino Team members (Diyeva, Brown, and Poplavska) and opposed said discriminatory practices, and when Plaintiff filed a formal discrimination and retaliation complaint with the NYCCHR/EEOC. In response to Plaintiff's engagements in protected activity, Defendant engaged in a plethora of retaliatory conduct against him.

83.     As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by: (1) increasing his workload by assigning him additional tasks and job duties that were not assigned to his similarly situated non-Filipino colleagues; (2) denying Plaintiff the opportunity to return to work from furlough while offering the same to his similarly situated non-Filipino colleagues; and (3) terminating his employment shortly after he filed a formal complaint with the NYCCHR/EEOC on the pretextual basis that it was laying off "multiple" employees.

84.     As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of N.Y. Admin. Code § 8-107(7), Plaintiff suffered and continues to suffer mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A.      Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq*., and the New York City Human Rights Law, N.Y. Admin Code 8-107, *et seq.* by discriminating against Plaintiff on the basis of his Asian race and Filipino national origin and retaliating against Plaintiff following his engagements in protected activity;

B.      Awarding damages to Plaintiff, resulting from Defendant's unlawful termination of his employment and to otherwise make him whole for any losses suffered as a result of such unlawful employment practice;

C.      Awarding Plaintiff compensatory damages for mental, emotional, and physical injury,

distress, pain and suffering and injury to his reputation in an amount to be proven;

D.      Awarding Plaintiff punitive damages;

E.      Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the

action;

F.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and

proper to remedy the Defendant's unlawful employment practices.

Dated: October 4, 2022
       New York, New York

                                         Respectfully submitted,

                                         _/s/Samantha E. Hudler_____
                                         Samantha E. Hudler
                                         White & Hilferty
                                         *Attorneys for Plaintiff*
                                         757 Third Avenue, 20th Floor
                                         New York, New York 10017
                                         (917) 565-8763

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
ARMANDO ENRIQUEZ,

                            Plaintiff,                                    **VERIFICATION**

            -against-

KASPER GROUP LLC,
                            Defendant.
------------------------------------------------------------------------X

      ARMANDO ENRIQUEZ, pursuant to the provisions of 28 U.S.C. 1746, declares the following under penalty of perjury that the foregoing is true and correct:

1. I am the Plaintiff herein.

2. I have read the foregoing Complaint and know the content thereof, that the same is of my own knowledge except as to the matters therein stated upon information and belief; and that as to those matters, I believe the same to be true.

Executed:      New York, New York
               October 4, 2022

                                              _____
                                              Armando Enriquez, Plaintiff

23